CHAMPLAIN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 145. Argued January 5, 1972.—Decided February 1, 1972.*
(Also reported in 193 N. W. 2d 868.)

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   The first contention of Champlain is that Count I of the information charging him with armed robbery was void because it failed to charge armed robbery or any other offense known to law. The count [1] does not allege Champlain in taking the property used any force to overcome the owner's resistance or that he took the property by threatening the imminent use of force against the owner. The state in its brief concedes Count I does not allege armed robbery as that offense is defined in sec. 943.32 (1) and (2), Stats.,[2] because the use of force or threat of force is not alleged. However, the state contends the count alleges an attempted theft from the person under sec. 943.20 (1) (a) and (3) (d). We disagree. Count I does not charge any attempt. True, it alleges only a completed act of taking, but it does not

---

[1] "Count I: on the 27th day of December, 1969, at the Town of Fountain in said County the above-named defendant did: With intent to steal, take property from the person, presence of the owner, to-wit: Lars Nelson, while armed with a dangerous weapon, contrary to Section 943.32 (2) of the Wisconsin Statutes, and may be imprisoned not more than 30 years; . . ."

[2] "943.32 Robbery. (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means may be imprisoned not more than 10 years:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or

"(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

"(2) Whoever violates sub. (1) while armed with a dangerous weapon may be imprisoned not more than 30 years."

charge all the elements of theft or attempt by way of the intention to perform the acts and attain a result which would constitute theft, and which would have been completed except for some intervening force or factor. *See* sec. 939.32 (2), Stats. Alleging one half a crime is not alleging an attempt.

A complaint which charges no offense is jurisdictionally defective and void and the defect cannot be waived by a guilty plea; the court does not have jurisdiction. *State v. Lampe* (1965), 26 Wis. 2d 646, 648, 133 N. W. 2d 349; *Burkhalter v. State* (1971), 52 Wis. 2d 413, 424, 190 N. W. 2d 502. Nor can a void charge sustain a verdict or a sentence based on it. *See Howard v. State* (1909), 139 Wis. 529, 534, 121 N. W. 133; *Paxton v. Walters* (1951), 72 Ariz. 120, 231 Pac. 2d 458. While a verdict can aid the charge or information which is defective, indefinite but not void, a verdict cannot cure the absence in the information of a material element of the crime. 41 Am. Jur. 2d, *Indictments and Informations*, p. 1072, sec. 310; 42 C. J. S., *Indictments and Informations*, pp. 1350, 1351, sec. 319.

It is argued Champlain could not be convicted of the theft alleged in Count II because theft is an included offense of robbery. The state argues the crime of theft is not included in robbery because sec. 943.20 (1) (a), Stats., defining "theft," requires one to take and carry away, while sec. 943.32 (1), defining "robbery" refers only to the taking of property from the person or presence of the owner. Thus theft includes more than the taking. By its statutory definition, it is the taking plus the carrying away, or the use, or the transfer, or the concealment, or the retaining in possession, of movable property of the other person without his consent and with intent to deprive the person permanently of the possession of the property. While there is a conflict on whether

theft is included in the crime of robbery,[3] this court has held that asportation is a separate and necessary element of the crime of theft. *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 77, 187 N. W. 2d 823. Since the Count I, attempting to allege armed robbery, is void, the argument that the crime of theft was an includable crime has no factual foundation.

We think the evidence sustains the crime of theft. Champlain and two companions James Cooke and Steven Wurzinger entered the home of Lars Nelson in rural Juneau county on the night of September 26, 1969, and after some ransacking of the house and some pistol beating of Nelson, they took a coin purse from his person containing $104 and left the premises. Their only purpose of visiting Nelson on that occasion was to steal.

It is argued the conviction of burglary charged in Count IV was improper because the information and the verdict were duplicitous. On the same night of the break-in at Lars Nelson's, Champlain and his two companions broke into the Cooney residence where they took some chain saws. Champlain was originally charged with both theft and burglary, but the theft charge (Count III) was dismissed because of the insufficiency of the evidence as to ownership of the saws.

---

[3] 42 C. J. S., *Indictments and Informations*, p. 1322, sec. 293; *Walker v. United States* (D. C. Cir. 1969), 418 Fed. 2d 1116 (22 D. C. Code secs. 2201, 2901 (1967 ed.), Larceny—"take and carry away;" Robbery—"take from the person") ; *State v. Fonza* (1962), 254 Iowa 630, 118 N. W. 2d 548 (secs. 709.1, 711.1, Iowa Code Annot., Larceny—"steal, take, and carry away;" Robbery—"steal and take from the person") ; *State v. Little* (1967), 19 Utah 2d 53, 426 Pac. 2d 4 (secs. 76–38–1, 76–51–1, Utah Code Annot., Larceny —"stealing, taking, carrying, leading or driving away;" Robbery— "taking") ; *Throneberry v. Resolute Ins. Co.* (1960), 206 Tenn. 216, 332 S. W. 2d 227 (secs. 39–3901, 39–4202, Tenn. Code Annot., Larceny—"taking and carrying away;" Robbery—"taking").

The information charged two types of offenses,[4] in the disjunctive: Burglary with intent to steal, and burglary with intent to commit a felony. These are separate offenses and properly are so treated in standard jury instructions Wis J I—Criminal 1421 and 1424. The verdict contains the same defect as it refers to Count IV and to burglary at the Cooney residence. The information, the instruction and the verdict, when the crime of burglary with the intent to commit a felony is charged, should state what felony was involved. Besides the ambiguity in the count and verdict, the instructions of the court intermixed burglary with intent to steal with intent to commit a felony and are so misleading that we have come to the conclusion the real issue has not been tried. The conviction should be reversed and a new trial granted in the interest of justice. Sec. 251.09, Stats.

Error is alleged because the trial court unduly restricted the cross-examination of James Cooke, an accomplice who turned state's evidence. He testified that after he pleaded guilty he was allowed to spend some time alone with his wife in his cell on the second floor of the county jail. Counsel for Champlain during cross-examination attempted to discover whether Cooke had been given favors to plead guilty and to incriminate Champlain with his testimony. Objections to this line of questioning of a deputy sheriff of Juneau county were sustained. We think the form of the questions was improper for this purpose and on this ground the objections were properly sustained.

However, we think this line of reasoning is material because it goes to the impeachment of the state's witness.

---

[4] "Count IV: on the 27th day of September, 1969, at the Town of Plymouth in said County the above-named defendant did: Intentionally enter a building, to-wit: the Louis Cooney residence, without the consent of the person or persons in lawful possession and with intent to steal or commit a felony, contrary to Section 943.10 (1) (a) of the Wisconsin Statutes and may be imprisoned for not more than 10 years; . . ."

An accused has a right to discover why an accomplice has pleaded guilty and has testified against him. This may have been part of a plea bargain. The reason for turning state's witness is material and within the accused's right of confrontation guaranteed by the sixth amendment of the federal constitution and of art. I, sec. 7, of the Wisconsin Constitution. While it is true the extent of cross-examination for impeachment purposes is within the trial court's discretion, *State v. Becker* (1971), 51 Wis. 2d 659, 667, 188 N. W. 2d 449, this discretion may be abused.

Error is also assigned because the trial court on its own motion instructed the jury that Champlain's failure to testify could not be held against him.[5] There is a conflict of authorities whether the giving of such an instruction is proper,[6] since giving it may do harm to the accused when its purpose is to assure a fair trial. This court has held a trial court has no duty to give such instruction sua sponte. *Johns v. State* (1961), 14 Wis. 2d 119, 109 N. W. 2d 490; *State v. Cassel* (1970), 48 Wis. 2d 619, 180 N. W. 2d 607. The decision to ask for such an instruction or to object to it is essentially a matter of trial strategy for defense counsel to determine. *Price v. State* (1967), 37 Wis. 2d 117, 130, 154 N. W. 2d 222. Recently in *State v. McGee* (1971), 52 Wis. 2d 736, 749, 750, 190 N. W. 2d 893, this court held it was not error for the trial court to give such an instruction during or at the time of the *voir dire;* at this time the instructions are less

---

[5] The court gave the following instruction without request or objection by Champlain: "The Defendant has not testified in this case although he could have taken the witness stand if he had so desired. The law does not compel a Defendant to testify, and his failure to do so does not create any presumption against him. You are neither to draw any inference therefrom nor to consider it as an admission on his part."

[6] *See* Annot. (1968), *Propriety Under Griffin v. California and Prejudicial Effect of Unrequested Instruction that No Inferences Against Accused Should Be Drawn From His Failure to Testify,* 18 A. L. R. 3d 1335.

apt to harm the accused as they are then impersonal and not focused on any nonaction by him. However, here the instruction was given after all the evidence was in and it was obvious Champlain had not taken the stand. We are not now prepared to hold the giving of such instruction sua sponte is reversible error; but because we think the matter of whether the instruction should or should not be given at this point in the trial is subject to debate and trial strategy, the better practice is for the trial judge to give the instruction only if it is requested by the defendant. This is the view taken in the recent cases of *State v. Emrick* (Vt. 1971), 278 Atl. 2d 712, and *State v. Moreno* (1971), 107 Ariz. 146, 483 Pac. 2d 786. In a case where the trial court might feel because of the facts and the lack of skill of counsel for the defense such an instruction might well be given, the trial judge might properly offer such instruction for defense counsel's consideration. *See Price v. State, supra,* at 130.

The last alleged error refers to another matter frequently occurring in criminal trials. During direct examination of James Cooke, the state asked him where he had first met Champlain. After Cooke replied it was at the Union Grove State Farm, the district attorney asked, "What type of place is that?" Defense counsel objected but the court overruled and Cooke replied, "It is a correctional institution—a correctional farm." An objection to the admissibility of evidence must be made with specificity so the trial judge and the adversary are given an opportunity to remedy any defect, *State v. Hoffman* (1942), 240 Wis. 142, 150, 2 N. W. 2d 707. However, when the ground for objection is obvious, the specific ground of objection is not important. McCormick, *Evidence,* pp. 117, 118, sec. 52. The only purpose of a district attorney's asking such type of question is to indirectly inform the jury the accused has been in prison. The object of such information is to prejudice the defendant by inference. Normally, the place where the witness met the

accused for the first time is immaterial on the issue of guilt. However, since the testimony relating to the theft alleged in Count II, which we sustain, is so overwhelming, we think this error of allowing this question to be answered to be harmless beyond a reasonable doubt.

*By the Court.*—The order must be reversed and the judgment of conviction is modified by reversing the conviction and sentence on Count I relating to the charge of armed robbery; the judgment of conviction on the charge of theft on Count II is affirmed; and the judgment of conviction on the charge of burglary on Count IV is reversed and a new trial granted.